616 So.2d 713 (1993)
STATE of Louisiana, Plaintiff-Appellee,
v.
General CALDWELL, Defendant-Appellant.
No. CR92-991.
Court of Appeal of Louisiana, Third Circuit.
March 3, 1993.
*716 Jerry Jones, Dist. Atty., Neal Glen Johnson, for the State.
Timothy Allison Meche, for General Caldwell.
Before DOUCET, YELVERTON and WOODARD, JJ.
WOODARD, Judge.
This criminal appeal concerns the charges against General Caldwell, a successful businessman from Bastrop, Louisiana. Because pretrial publicity prevented the impanelling of an unbiased jury, a mistrial was declared during jury selection for defendant's first trial, a change of venue was ordered and the trial was moved from Morehouse Parish to Lafayette Parish. Judge Michael Ingram of the Fourth Judicial *717 District was appointed as judge ad hoc to preside over the defendant's trial in Lafayette. The jury acquitted the defendant on count 1, distribution of cocaine, and convicted the defendant on the three remaining counts of distribution of cocaine, violations of La.R.S. 40:967 A. The defendant was sentenced to thirty (30) years at hard labor for count 2, twenty-five (25) years at hard labor for count 3, and twenty (20) years at hard labor for count 4, and all sentences were ordered to run consecutively.
The defendant has appealed and assigned eighteen errors that have been combined for argument into ten issues: admissibility of audio tapes of defendant's conversations with the undercover agent; governmental misconduct; improper jury instructions on entrapment; sufficiency of the evidence; improper denial of challenge for cause; admission of hearsay testimony; admission of irrelevant and prejudicial testimony; curtailing defendant's questioning of witnesses; refusal to give defendant's special requested jury instruction; and excessive sentences.

FACTS
The original charges against the defendant were the result of an investigation by the Morehouse Parish Sheriff's Office and the Louisiana State Police. General Caldwell was a successful businessman in Morehouse Parish and a prominent citizen in the community. Law enforcement officers had long suspected that the defendant was engaged in drug trafficking, but were unable to infiltrate the defendant's drug trafficking network with local undercover agents. In 1988, defendant was arrested and charged with four counts arising out of the distribution and attempted distribution of cocaine and marijuana to these undercover officers. On May 2, 1989, the defendant entered into a plea bargain agreement in which he pled guilty to the reduced charge of conspiracy to distribute cocaine and the remaining charges were dismissed. On August 17, 1989, the defendant was sentenced to fifteen (15) years at hard labor, which was suspended and defendant placed on five (5) years supervised probation.
During the pendency of defendant's appeal of his first conviction, the defendant was arrested for four counts of distribution of cocaine to an undercover agent, Edward Dean Chafford. The criminal conduct giving rise to the four criminal counts occurred from May 4 to May 11, 1990. The defendant's first conviction became final five months later, on October 19, 1990, when the Louisiana Supreme Court denied the defendant's application for writs. State v. Caldwell, 567 So.2d 1126 (La.1990).
The present case began in April of 1990, when a local businessman, Mr. John Andrews, complained to Chief Deputy Marion Bankston and Sheriff Frank Carroll that the defendant's drug dealings were ruining the community and hurting his washateria business by scaring away his customers. Mr. Andrews wanted the defendant's drug dealing stopped. It was explained to Mr. Andrews that it was very difficult to obtain evidence against the defendant, but if Mr. Andrews could find someone who could purchase cocaine from defendant, the sheriff would pay that person $5,000.00.
Thereafter, Mr. Andrews introduced Edward Dean Chafford to the sheriff and chief deputy. Mr. Chafford had recently finished a month-long treatment program for his cocaine addiction. Mr. Chafford said that defendant was the person from whom he had purchased cocaine. Mr. Andrews' discussions with Mr. Chafford and the offer of $5,000.00 from the police persuaded Mr. Chafford to help the investigation.
The police questioned Mr. Chafford on his ability to purchase cocaine from the defendant. Mr. Chafford told them that whenever he wanted to buy cocaine, he would ask defendant if he could "cash a check." After one of the policemen dialed defendant's telephone number, Mr. Chafford spoke with the defendant, and the defendant told him, "yes", when Mr. Chafford asked if defendant could "cash a check."
*718 The next day, May 4, 1990, Mr. Chafford met with the state troopers who searched him and his truck, and then attached a small tape recorder, a Niagra recording device, to his body. The first attempt to record defendant selling cocaine to Mr. Chafford was aborted when Mr. Chafford's truck broke down en route to the defendant's house. The police removed the "body bug," and according to Mr. Chafford, he went on his own to defendant's house, purchased $260.00 worth of cocaine with the "buy money" the police gave him, and turned it over to State Police Lt. Jim Cannon. Lt. Cannon testified that Mr. Chafford asked that the "body bug" be removed because it made him too nervous and that they knew he was going back to the defendant's to purchase cocaine. There is no recording of the initial purchase of cocaine and the evidence consisted solely of the testimony of Mr. Chafford.
The next three purchases of cocaine from the defendant were recorded by the police who were also conducting extensive air and ground surveillance of Mr. Chafford's activities. On May 7, 9, and 11 of 1990, Mr. Chafford went to defendant's home and the defendant led Mr. Chafford to his bedroom where the defendant took a scale, spoon and plastic bag of cocaine and weighed out an "eight ball" or one-eighth ounce of cocaine for Mr. Chafford. The jury listened to the recordings of these transactions while looking at the transcripts which are part of the record.
Lieutenant Cannon of the state police explained that when using a paid civilian informant such as Mr. Chafford, the primary concern is that the informant is giving the police accurate information. To ensure this accuracy, the police took the precautions of supervision and surveillance of Mr. Chafford, searches of his vehicles and himself before he would purchase the cocaine from defendant, and recording the serial numbers of the "buy money" in order to link any cash defendant had to these sales of cocaine.
The defendant never disputed that he distributed cocaine to Mr. Chafford. The defendant relied upon the defenses of government misconduct and entrapment. The defendant presented to the jury the argument that the police were motivated to use any means possible to set up the defendant and thereby receive financial gain from forfeiture of his businesses and property. The defendant further argued that John Andrews was motivated by personal gain, jealousy, and vindictiveness to recruit an informer to help set up the defendant. Finally, the defendant argued that Edward Dean Chafford, a former addict, would say or do anything in order to get the $5,000 fee offered by the police.
The defense of government misconduct was rejected by the trial judge after a pretrial hearing on defendant's motion to quash. The defense of entrapment was rejected by the jury and it convicted the defendant on three of the four counts.

ERRORS PATENT
A review of the record reveals one error patent resulting from the failure of the trial judge to comply with the mandates of La.C.Cr.P. art. 930.8.
La.C.Cr.P. art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows the court did not so inform the defendant. This defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the case for resentencing. La.C.Cr.P. art. 921. The three year prescriptive period does not begin to run until the judgment is final under La.C.Cr.P. art. 914 or 922, so prescription is not yet running. The purpose of the notice of Article 930.8(C) is to inform defendant of the prescriptive period in advance; thus, the district court shall inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion, and shall file written proof that the defendant received the notice in the record of the proceedings. See State v. Cox, 604 So.2d 189 (La.App. 2 Cir.1992); State v. Stephens, 604 So.2d 203 (La.App. 2 Cir.1992).

*719 ASSIGNMENTS OF ERROR NOS. 16 AND 17
These assignments of error concern the sufficiency of the evidence to convict defendant.
In assignment of error number sixteen, the defendant asserts that the trial court erred in failing to grant his Motion for Post Verdict Judgment of Acquittal.
Defendant argues that because the jury acquitted him on count 1 they obviously accepted the entrapment defense and found that he was induced to sell cocaine when he did not have the requisite predisposition to do so. The alleged inconsistency in the verdicts is not, of itself, sufficient to mandate reversal of defendant's convictions. As the courts have noted, we should not be concerned with possible inconsistencies in verdicts, as long as the evidence is sufficient under the standard of review of Jackson v. Virginia, infra, to support the guilty verdicts. State v. Irvine, 535 So.2d 365 (La.1988), citing U.S. v. Powell, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); and State v. Gachot, 609 So.2d 269 (La.App. 3 Cir.1992).
The defendant further argues that the United States Supreme Court case of Jacobson v. U.S., ___ U.S. ___, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), should apply to this case and mandate reversal of defendant's convictions on counts 2, 3 and 4. Jacobson was decided on April 6, 1992, over two months after the defendant's conviction on January 24, 1992. Not only was the Jacobson decision not in existence at the time of defendant's trial, the Supreme Court itself emphasized that its ruling in Jacobson was not an innovation, or change, in the law of entrapment, but simply applied a long-established standard of law to the facts of the particular case. Jacobson v. U.S., ___ U.S. ___, ___-___, n. 2, 112 S.Ct. 1535, 1540-1541, n. 2. Therefore, defendant's argument that Jacobson created a new standard of proof for the entrapment defense is meritless.
We now move to the issue of sufficiency of the evidence and note that when this issue is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, at 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
The defendant does not dispute that the state has established all of the essential elements of the crime of distribution of cocaine, but instead claims he was entrapped by the conduct of the police and their agent, Edward Dean Chafford.
Entrapment is a defense which arises when a law enforcement official or an undercover agent, acting in cooperation with such an official for the purpose of obtaining evidence of a crime, originates the idea of the crime and then induces another person to engage in conduct constituting the crime, when the other person is not otherwise disposed to do so. State v. Brand, 520 So.2d 114, 117 (La.1988); and State v. Bernard, 441 So.2d 817, 820 (La.App. 3 Cir.1983), writ denied, 445 So.2d 439 (La.1984). Rather than negating an essential element of the crime, the entrapment defense establishes exculpatory circumstances that defeat culpability in spite of the fact that the prosecution has proved all of the essential elements of the crime beyond a reasonable doubt. State v. Brand, 520 So.2d 114 (La.1988). As the court noted in Brand, the burden is on the defendant to prove entrapment by a preponderance of the evidence. Id. at 117.
Defendant's predisposition to commit the crime of distribution of cocaine was *720 established not only by Mr. Chafford's testimony that before he received treatment for his cocaine addiction in January of 1990, the defendant was the person from whom he would purchase cocaine, but also by the defendant's prior conviction, in May of 1989, for conspiracy to distribute cocaine. Also, the defendant's revelations about his prior drug transactions and knowledge about making money from dealing drugs made during his recorded conversations with Mr. Chafford established the defendant's predisposition to distribute drugs. This evidence is sufficient to defeat the entrapment defense.
The defendant was unable to meet his burden in proving entrapment and therefore these assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. 1 AND 2
The defendant combined his discussion of these two assignments of error even though they involve separate issues. By assignment of error number one, the defendant complains that the trial court erred in admitting tape recordings of his conversations concerning the sales of cocaine to Mr. Chafford. Assignment of error number two concerns the defendant's decision not to testify at the hearing on the motion to suppress the audio tapes.
The defendant argues that the seizure of his oral communications without a warrant violated his rights under the Louisiana Constitution, Article 1, Sec. 5. The defendant's conversations with Mr. Chafford were recorded with the consent of Mr. Chafford by a device attached to Mr. Chafford's body. It is well-settled in Louisiana that the use of electronic surveillance equipment to secretly record a conversation with the consent of one of the parties to the conversation does not "invade the privacy" of the parties in the conversation within the meaning of both the state and federal constitutions, and therefore the warrant requirement does not attach. State v. Reeves, 427 So.2d 403, 410 (La.1982); State v. Marks, 503 So.2d 32, 34 (La.App. 1 Cir.1986), writ denied, 506 So.2d 110 (La.1987); State v. Serigny, 481 So.2d 659, 664 (La.App. 1 Cir.1985), writ denied, 484 So.2d 667 (La.1986); see La.R.S. 15:1303C(3). Defendant's first assignment of error is without merit.
In his second assignment of error, the defendant complains that he should have been permitted to testify about his relationship with Mr. Chafford prior to the May, 1990 cocaine sales, without being subject to cross-examine on any illegal activity which formed part of this prior relationship. Defendant argued at trial that his privilege against self incrimination barred questions about prior illegal activity. The State questioned the relevancy of defendant's testimony at the suppression hearing and the use of the Fifth Amendment privilege against self-incrimination to limit cross-examination. The trial court ruled that if defendant chose to testify at the suppression hearing about his relationship with the informant, then the State could cross-examine the defendant about that relationship, even if it involved prior illegal acts. Based on this ruling, the defendant chose not to testify.
Louisiana C.Cr.P. art. 703 E(1) provides that "[t]he defendant may testify in support of a motion to suppress without being subject to examination on other matters." Had defendant testified about his prior relationship with Mr. Chafford, the State could have cross-examined him about that relationship, including any illegal activity involved, because the subject is not an "other matter." We therefore find no error by the trial judge in stating that defendant could be cross-examined on the subject of his testimony if he chose to testify in support of his motion to suppress.

ASSIGNMENTS OF ERROR NOS. 3 AND 4
These combined assignments of error concern the defense of government misconduct. In assignment of error number three the defendant complains that the issue of government misconduct should have been presented to the jury. In assignment of error number four, the defendant contends the trial court should have granted his motion *721 to quash the charges based upon government misconduct.
The trial court required the defendant to present his defense of government misconduct in a pretrial motion to quash. The defendant argues that because the trial court denied him the right to present the defense to the jury, he was forced to use the less favorable defense of entrapment, which focused on his predisposition to sell drugs and drew the jury's attention away from the outrageous government misconduct in investigating and prosecuting the case.
The defense of government misconduct is a court created limitation upon the activities of the government in the court's exercise of its supervisory jurisdiction over the administration of criminal justice. This defense has been asserted in criminal cases in Louisiana, however, no Louisiana case has yet to resolve whether or not the defense of government misconduct is a question for the jury or trial judge. Questions of fact, such as guilt or innocence, sanity at the time of the offense, self-defense, or intoxication, are issues decided by the jury. Entrapment is also considered a question of fact to be decided by the jury. State v. Brand, 520 So.2d 114 (La.1988). Questions of law, on the other hand, are to be decided by the trial judge; for example, the sufficiency of an indictment, constitutionality of a statute, or admissibility of evidence is a legal issue determined by the judge.
Whether the defense of government misconduct is a question of fact which goes to the guilt or innocence of a defendant, or is a question of law, not dependent upon a defendant's guilt or innocence, has yet to be answered in a reported Louisiana decision. It has, however, been answered in federal jurisprudence, which is the source of the defense of government misconduct. The case of U.S. v. Swiatek, 819 F.2d 721, 726 (7th Cir.1987), cert. denied, 484 U.S. 903, 108 S.Ct. 245, 98 L.Ed.2d 203 (1987), noted that all of the federal circuits have held that the issue of outrageous government misconduct is not a jury question. Cited in support of this observation was the Federal Fifth Circuit case of U.S. v. Graves, 556 F.2d 1319 (5th Cir.1977), cert. denied, 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978). See also, U.S. v. Yater, 756 F.2d 1058, 1065 n. 11 (5th Cir.1985), cert. denied, 474 U.S. 901, 106 S.Ct. 225, 88 L.Ed.2d 226 (1985); and U.S. v. Nixon, 777 F.2d 958 (5th Cir.1985).
The issue of whether or not the prosecution of a defendant should be barred as a result of government misconduct or overreaching is, therefore, a question of law for the trial judge. The trial judge must decide if governmental participation is so outrageous or fundamentally unfair that it deprives a defendant of due process or if the government's misconduct moves the court in the exercise of its supervisory jurisdiction over the administration of criminal justice to hold that the defendant was "entrapped" as a matter of law. See, U.S. v. Yater, supra; and U.S. v. Graves, supra. We therefore find that the trial court correctly required the defendant to plead government misconduct by pretrial motion to quash.
The issue raised by defendant's fourth assignment of error is whether the defendant established the defense of government misconduct at the pretrial hearing. Defendant argues that his motion to quash should have been granted since the manner in which the State approached, recruited, compensated and used the informant was not consistent with acceptable standards of society and offended defendant's right to due process.
In his argument to the trial court and in his appellate brief, defendant relies almost exclusively on the case of Williamson v. U.S., 311 F.2d 441 (5th Cir.1962), which prohibited the government from using an informer who infiltrated a bootlegging operation and was paid a fee contingent upon whom he could "catch" and how many. The 1987 case of U.S. v. Cervantes-Pacheco, 826 F.2d 310 (5th Cir.1987), overruled Williamson v. U.S. and held that the use of a compensated witness is a credibility issue for the jury to determine and not the subject of a per se exclusionary rule. Id. at p. 316.
*722 The State argued that the defense of government misconduct is defeated by proof of a defendant's active participation in the crime, and the testimony and transcripts of the sales of cocaine established that the defendant was an active and willing participant in the sales of cocaine. Louisiana criminal cases discussing the defense of government misconduct recognize that an active participant in the criminal activity cannot avail himself of this defense. See State v. Marks, 503 So.2d 32 (La.App. 1 Cir.1986), writ denied, 506 So.2d 110 (La.1987); State v. Boyd, 548 So.2d 1265 (La.App. 2 Cir.1989), writ denied 556 So.2d 1259 (La.1990), cert. denied 496 U.S. 909, 110 S.Ct. 2596, 110 L.Ed.2d 276 (1990); and State v. Kotwitz, 549 So.2d 351 (La.App. 2 Cir.1989), writ denied, 558 So.2d 1123 (La.1990).
A review of the record reveals neither outrageous government conduct violative of fundamental fairness and due process nor law enforcement practices inconsistent with the standards of society. The record does reveal the defendant's active participation in the distribution of cocaine. Therefore, we find no error in the trial court's denial of defendant's Motion to Quash.

ASSIGNMENT OF ERROR NO. 5
By this assignment, defendant contends the trial court erred in failing to grant the defendant's challenge for cause for prospective juror, Deborah L. Bourque. During voir dire, Ms. Bourque expressed problems with applying the defense of entrapment and voting for acquittal of the defendant if the defendant established this defense.
In order to obtain a reversal based upon the trial court's denial of a challenge for cause, a defendant needs to show two things: (1) that the trial judge erred in refusing to sustain the challenge for cause; and (2) that defendant exhausted all of his peremptory challenges. State v. Neil, 540 So.2d 554 (La.App. 3 Cir.1989). The trial court is vested with broad discretion in ruling on a challenge for cause and that ruling will not be disturbed on appeal absent a showing of an abuse of that discretion. A review of the entire voir dire, and not selected portions, is essential to determine if the trial court erred. State v. Gintz, 438 So.2d 1230 (La.App. 3 Cir.1983). A challenge for cause is not warranted when a prospective juror makes a statement which may be prejudicial to the defendant but is later rehabilitated by further inquiry or instructions by the court and demonstrates the ability and willingness to decide the case impartially according to the law and evidence presented in court. State v. Bates, 397 So.2d 1331 (La.1981).
After reviewing the entire voir dire of Ms. Bourque, it is apparent that she was rehabilitated because she insisted that she would have to hear all of the evidence before she could decide whether or not the defendant was entrapped by the police. Ms. Bourque never said she could not apply the law of entrapment to the defendant's case; she simply had problems distinguishing the theories of the different burdens of proof without any factual background to apply these theories to. Ms. Bourque demonstrated an ability and willingness to apply the law as presented by the court to the evidence submitted at trial. Therefore, there was no error in denying the defendant's challenge for cause for Ms. Bourque.
In the defendant's original assignment of error, he also challenged the denial of a challenge for cause for prospective juror, Ann Marie Ballback. Defendant did not mention this prospective juror in his brief. Because he failed to argue this matter in his appellate brief, it is deemed abandoned and not considered on appellate review. Uniform RulesCourts of Appeal Rule 2-12.4.

ASSIGNMENTS OF ERROR NOS. 7 AND 8
These combined assignments of error concern the admission of hearsay testimony. In assignment of error number seven, the defendant complains that the trial court erred when it allowed Sheriff Frank Carroll to testify about what he heard the informant, *723 Mr. Chafford, tell defendant when he called the defendant to purchase cocaine.
Hearsay is defined by the Louisiana Code of Evidence Article 801 C as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Paragraph D of this article sets forth those statements which do not constitute hearsay. La.C.E. art. 801 D(4) provides:
Things said or done. The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
This provision incorporates what was formerly La.R.S. 15:447 and 448, known as the "res gestae" exception to the hearsay rule. Rault, An Overview of the New Louisiana Code of Evidence, 49 La.L.Rev. 689, 726 (1989). Louisiana jurisprudence interpreting La.C.E. art. 801 D, and its predecessor, La.R.S. 15:448 (repealed 1988), have consistently held that the conversations between persons who are negotiating a drug transaction are admissible either as a res gestae exception to the hearsay rule or, as provided in La.C.E. art. 801 D(4), not hearsay. State v. Kidd, 568 So.2d 175, 180 (La.App. 2 Cir.1990); See also State v. Feeback, 414 So.2d 1229 (La.1982); State v. Joseph, 341 So.2d 861, 867 (La.1977); State v. Fontenot, 524 So.2d 867, 869 (La.App. 3 Cir.1988); State v. Dore, 443 So.2d 644, 647 (La.App. 3 Cir.1983).
Therefore, there was no error in the ruling of the trial court allowing Sheriff Carroll to testify about a statement he overheard while the informant was negotiating a purchase of cocaine from defendant. State v. Dore, supra; see, State v. Granier, 563 So.2d 1354 (La.App. 4 Cir.1990), writ granted in part and denied in part, 578 So.2d 528 (La.1991), on remand, 592 So.2d 883 (La.App. 4 Cir.1991), writ denied, 600 So.2d 1334 (La.1992). Sheriff Carroll's testimony was not hearsay, La.C.E. art. 801 D(4), and was admissible at defendant's trial.
Assignment number eight concerns testimony about the amount of cocaine involved in the defendant's prior conviction, which was brought out by the State during redirect examination of Sheriff Carroll. Sheriff Carroll did not have personal knowledge of how much cocaine the defendant was charged with distributing in his 1989 conviction, but as sheriff he had reviewed the reports which stated that the defendant distributed over 28 grams of cocaine. The defendant objected, contending that this information was hearsay, and the State argued that the public records exception to the hearsay rule, specifically La.C.E. art. 803(8)(i) and (ii), applied.
The Public Records or Reports exception to the hearsay rule appears in La.C.E. art. 803(8). As the comments to this exception note, the exclusion from the public records exception of investigative reports by police and other law enforcement personnel does not apply to governmental laboratory reports authorized by La.R.S. 15:499-500. La.C.E. art. 803, comments to Exception (8), comment (j). It is not known whether Sheriff Carroll was testifying at trial about information contained in the laboratory reports prepared for the defendant's earlier conviction, or if he relied upon information contained in investigative reports of other policemen. The record of the prior conviction of the defendant is not included in the record of the present charges against the defendant.
If Sheriff Carroll testified about information contained in investigative reports of other policemen, the defendant may be correct in his claim that the testimony was hearsay. However, the defendant must establish that this alleged error affected a substantial right or otherwise influenced the jury to convict the defendant before his convictions may be reversed. La.C.Cr.P. art. 921. The context in which this testimony arose establishes that it was the defendant who brought before the jury details about his prior conviction being the result *724 of a plea bargain agreement. Also, it was defendant who thoroughly explored the issue of how much cocaine he was alleged to have been distributing before his arrest in May of 1990.
It is evident that the information which the State placed before the jury with arguably inadmissible hearsay testimony had already been presented by defendant to the jury. It is well settled that inadmissible hearsay which is merely cumulative or corroborative of other testimony adduced at trial is considered harmless. State v. Spell, 399 So.2d 551, 556 (La.1981); and State v. Reed, 441 So.2d 1257 (La.App. 1 Cir.1983), writ denied, 445 So.2d 1233 (La.1984). Further, it was within the reasonable scope of the redirect examination for the State to establish that the prior narcotics conviction of the defendant also involved a large amount of cocaine. See, State v. Burrell, 561 So.2d 692, 702-703 (La.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 799, 112 L.Ed.2d 861 (1991). Counsel for defendant presented a theory of defense that Mr. Chafford improperly induced or coerced the defendant to get him cocaine and thereby implied that the defendant was not a large-scale drug dealer. While counsel for defendant did not ask specifically how much cocaine was involved in the defendant's prior conviction, his extensive questioning of Sheriff Carroll about the defendant's plea bargain for his prior conviction and quantifying what constitutes a drug dealer of "large magnitude" opened the door for the State on redirect examination.
Having failed to show any prejudice resulting from the admission of this testimony, the defendant's eighth assignment of error is rejected as meritless.

ASSIGNMENTS OF ERROR NOS. 9 AND 11
The defendant has combined his argument of these assignments of errors because he has claimed in each that the testimony introduced was irrelevant and highly prejudicial. In assignment of error number nine, defendant objects to the playing of that portion of the tape recording of his May 9, 1990 sale of cocaine in which he tells Mr. Chafford about his sale of marijuana to someone in Arkansas. The eleventh assignment of error concerns the testimony of Chief Deputy Bankston.
The transcript of the May 9, 1990 sale of cocaine by defendant was admitted into evidence as State's exhibit S-9, and it is also part of the record as State's exhibit S-3 for a pretrial hearing on defendant's motion to quash. During the testimony of Mr. Chafford, the State played the tape recordings of the telephone conversations and drug sales while the jury looked at transcripts of the conversations. Before playing the tape of the May 9 sale, the defendant objected to that portion of the tape referring to his distribution of marijuana. He claimed it was highly prejudicial and irrelevant to the charges of distribution of cocaine. The trial court overruled defendant's objection and the jury heard the entire tape recording of the defendant talking to Mr. Chafford while he was weighing and preparing the 8-ball of cocaine.
Louisiana Code of Evidence Article 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. The State did not place any emphasis on this statement, nor was it the subject of any questioning by the State. This evidence was probative of the defendant's predisposition to sell illegal narcotics and his knowledge and involvement in the distribution of drugs. Considering the overwhelming evidence against the defendant, it is difficult to believe that this comment prejudiced him any more than the other evidence presented. The trial court correctly overruled defendant's objection.
The eleventh assignment of error concerns the testimony of Chief Deputy Marion Bankston. Chief Deputy Bankston was called as a witness by the defendant. On cross-examination, the State elicited from the deputy an explanation of the difference between "crack" cocaine and powdered cocaine, and how "crack" cocaine is made by cooking powdered cocaine in a *725 liquid to obtain the rock form of pure cocaine.
A review of the record reveals that this testimony was corroborative of evidence already before the jury. State v. Spell, supra. The evidence was also relevant since it was probative of the defendant's predisposition to distribute drugs and established the defendant's knowledge about distributing drugs and making the most money from drug dealing. Therefore, the defendant's eleventh assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 10 AND 12
In these assignments of error, the defendant challenges the trial court rulings on his attempted impeachment of the credibility of Mr. Chafford and Mr. John Andrews.
Assignment of error number ten concerns the ruling of the trial court curtailing the defendant's inquiry into Mr. Chafford's current employment as a teacher's aide for special education classes. When the State objected to the line of questioning, the defendant explained the relevance of his inquiry.
BY MR. MECHE:
The relevance of this is, Your Honor, the government has been using this guy for the last two years. They put him on their payroll all for this day for him to give paid for testimony(interrupted)
BY MR. JONES:
Your Honor, I object to that statement. It's totally uncalled for an untrue.
BY THE COURT:
The objection is sustained.
The defendant did not pursue the question any further, nor did he object that the trial court was improperly curtailing his right to confrontation.
We find no error in the trial court's ruling. The defendant argued to the jury in his opening statement that Mr. Chafford improperly coerced or induced the defendant to sell him cocaine in order that Mr. Chafford could receive beneficial treatment of pending burglary charges and in order to receive the $5,000.00 fee. There was no evidence that the police also helped Mr. Chafford get a job as a teacher's aide, and this alleged evidence of continued assistance in return for Mr. Chafford's testimony is so remote that, pursuant to La. C.E. art. 403, it would be excluded as confusing the issues, misleading the jury, or a waste of time. An examination of the record establishes an otherwise thorough examination of the background and benefits received by Mr. Chafford. The fact that the jury acquitted the defendant on the one count of distribution of cocaine not corroborated by a tape recording gives credence to the argument that the jury did not believe Mr. Chafford unless they had further independent corroboration of his testimony.
Assignment of error number twelve concerns the defendant's attempted impeachment of John Andrews. The defendant called Mr. Andrews as a witnesses in order to impeach him. Mr. Andrews was not a witness to any of the crimes that were the subject of this prosecution. His only involvement was putting the police in contact with Edward Dean Chafford. It was Mr. Chafford who purchased the cocaine from defendant. He is the one person who could have entrapped the defendant. The state objected to the defendant's questioning of Mr. Andrews when the defendant wanted to know about the termination of a joint business venture between the defendant and Mr. Andrews fifteen (15) years earlier. The defendant argued this evidence was relevant to show Mr. Andrews's improper motive to obtain a cooperating informant to help the police make a case against the defendant. Even after the trial court sustained the State's objection, counsel for defendant was allowed to thoroughly examine Mr. Andrews about his motives for his involvement, his contact with the police and with the defendant. There was no curtailment of the defendant's right to question Mr. Andrews about his motives or prejudices against the defendant, only a ruling by the trial court preventing counsel for defendant from confusing the issues or misleading the jury.
*726 Therefore, this assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 14 AND 18
These assignments of error concern the trial court's refusal to give special requested jury instructions.
By assignment of error number eighteen, the defendant complains that the trial court erred in instructing the jury that the defendant has the burden of proving entrapment. Defendant cites as support for his argument the United States Supreme Court case of Jacobson v. U.S., ___ U.S. ___, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992). The defendant also acknowledges that he did not object to the trial court's instruction but argues that this omission should not be considered a waiver of this objection since the jury instruction used by the trial court was a misstatement of law affecting the fairness of the trial and the rights to due process.
The reason the defendant did not object to the jury instruction on entrapment was that Jacobson v. U.S., supra, was decided on April 6, 1992, several months after the defendant's January, 1992, trial. Counsel for defendant could not have possibly cited to the trial court the decision in Jacobson v. U.S. as support for his argument since the ruling did not exist at the time of defendant's trial. Furthermore, the ruling of Jacobson did not change the existing law on entrapment, but only emphasized firmly established standards concerning predisposition. Jacobson v. U.S., ___ U.S. at pp. ___-___, n. 2, 112 S.Ct. at pp. 1540-1541, n. 2. Therefore, defendant's argument has no merit.
Defendant's fourteenth assignment of error concerns a special requested jury instruction submitted to the trial court regarding credibility of informants. It was drawn from the 1990 Pattern Jury Instructions of the Federal Fifth Circuit. The State responded with a special requested jury instruction drawn from the case of State v. Berain, 360 So.2d 822 (La.1978), which actually follows the general charge to the jury on weighing witness credibility. Although neither the State's nor the defendant's written special requested jury instructions were filed in the record of this case, the trial judge acknowledged receiving and reviewing both.
Defendant argues that the jury instruction approved by the Louisiana Supreme Court in State v. Berain, supra, should not have been used by the trial court since it is old law based upon a 1978 ruling, and that the Pattern Jury Instruction from the Federal Fifth Circuit was derived from the 1990 edition. Defendant further argues that the State could not point to any legal infirmity with the defendant's requested instruction. The State argued that defendant's requested charge was misleading and cited Berain, which further noted that such a requested charge singles out police informers as a class of witnesses whose believability, or credibility, was suspect. State v. Berain, 360 So.2d at 829.
Louisiana Code of Criminal Procedure Article 807 provides that a special requested jury instruction shall be given if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. This article further provides that if the special requested instruction is already included in the general charge or instruction, the special instruction need not be given. As noted in Berain, the general charge or instruction to the jury on weighing witness credibility covers the issue of determining the bias or interest of an informer. Id. at 829. The fact that this statement of law arose from a ruling issued 14 years ago should not detract from its current validity. It may be old law, but it is still good law. Therefore, defendant's fourteenth assignment of error is without merit.

*727 ASSIGNMENT OF ERROR NO. 15
This assignment of error concerns the excessiveness of defendant's sentences.
In regard to this assignment of error, La.C.Cr.P. art. 881.1 provides in full:
Art. 881.1. Motion to reconsider sentence
A. (1) Within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
(2) The motion shall be oral at the time of sentencing or in writing thereafter and shall set forth the specific grounds on which the motion is based.
B. If a motion is made or filed under Paragraph A of this Article, the trial court may resentence the defendant despite the pendency of an appeal or the commencement of execution of the sentence.
C. The trial court may deny a motion to reconsider sentence without a contradictory hearing.
D. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
A review of the record reveals that no motion to reconsider defendant's sentence was filed. An internal request to the clerk of court also revealed that no motion to reconsider sentence has been filed. Thus, the defendant is precluded from raising the claim of excessiveness and failure to comply with the sentencing guidelines on appeal. State v. Trahan, 607 So.2d 1016 (La.App. 3 Cir.1992).

ASSIGNMENTS OF ERROR NOS. 6 AND 13
The defendant has failed to brief these assignments of error and they are thus deemed abandoned. Uniform RulesCourts of Appeal Rule 2-12.4.

CONCLUSION
For the foregoing reasons, the defendant's convictions are affirmed. Furthermore, the trial judge is instructed to inform the defendant of La.C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings.
AFFIRMED WITH INSTRUCTIONS.